**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOUSTAVE JOCELIN,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Respondents. | Case No. 1:25-cv-01500-KES-SAB-HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner, represented by counsel, is proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a citizen of Haiti. (ECF No. 1 at 5; ECF No. 11-1 at 2.[1]) Petitioner, his spouse, and his child entered the United States on or about September 22, 2021. All three family members have remained in the United States since then. (ECF No. 1 at 6.) Petitioner applied for and received Temporary Protected Status ("TPS")[2] in 2023. On July 12, 2024, Mr. Jocelin

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

[2] "Pursuant to the TPS statute, 8 U.S.C. § 1254a, the DHS Secretary may designate a foreign state for TPS when nationals of that state cannot return there safely due to armed conflict, natural disaster, or other 'extraordinary and temporary conditions,' unless the Secretary 'finds that permitting the [noncitizens] to remain temporarily in the United States is contrary to the national interest of the United States.'" Nat'l TPS All. v. Noem, 150 F.4th 1000, 1010 (9th Cir. 2025) (quoting 8 U.S.C. § 1254a(b)(1)(C)). "Such a designation permits certain nationals of the foreign state, who have continuously resided in the United States since the effective date of the designation, to register for employment authorization and protection from deportation for the duration of the TPS period." Nat'l TPS All., 150 F.4th at 1010 (citing 8 U.S.C. § 1254a(a)(1), (b)(2)). "Other restrictions apply: applicants must be 'admissible' under the immigration laws, id. § 1254a(c)(1)(A)(iii); they must not have been 'convicted of any felony or 2 or more misdemeanors committed in the United States,' id. § 1254a(c)(2)(B)(i); and they risk revocation of

applied for TPS again and it was granted. His approval notice for his TPS was issued on June 2, 2025. (ECF No. 1 at 6; ECF No. 3 at 5–6.) This approval notice lists Petitioner's TPS as being valid from August 4, 2024 to August 3, 2025. (ECF No. 3 at 5.) Attached to the approval notice was Petitioner's I-94, which serves as proof of his TPS registration. His I-94 also lists his TPS as being valid from August 4, 2024 to August 3, 2025. (ECF No. 3 at 5.) However, as a result of litigation, Petitioner's TPS is valid until February 3, 2026. (ECF No. 1 at 8–9.)

In December 2023 or January 2024, U.S. Immigration and Customs Enforcement ("ICE") began requiring Petitioner to use an application on his phone to check in with them. ICE would call Petitioner and ask him to send them a picture of himself through the phone application. Petitioner was also required to attend in-person check-ins with ICE at their office in San Francisco. On October 30, 2025, Petitioner went to the San Francisco ICE office for an in-person check-in during which ICE officers took Petitioner into custody. The ICE officers told Petitioner that he was being detained because he had been late in sending in a photo through the application on his phone but did not provide Petitioner with any further explanation for his detention or the specific date on which he allegedly sent in a photo late. (ECF No. 1 at 7.)

On October 30, 2025, Petitioner was transported to the California City Detention Facility. (ECF No. 1 at 8.) On November 3, 2025, Petitioner's counsel sent an email citing the TPS statute's non-detention provision[3] and included as an attachment proof of Petitioner's TPS status to the relevant supervisory officials at the Bakersfield ICE office, which is in charge of detainees at the California City Detention Facility. (ECF No. 3 at 15–16.) On November 4, 2025, counsel called the Bakersfield ICE field office to follow up on the email, but no one answered the phone. (ECF No. 1 at 8.)

On November 5, 2025, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) That same day, the Court indicated its intent to rule directly on the petition "with the understanding that the Court will also consider

---

status if the Secretary 'finds that the [noncitizen] was not in fact eligible for such status,' *id.* § 1254a(c)(3)(A)." Nat'l TPS All., 150 F.4th at 1010

[3] 8 U.S.C. § 1254(d)(4) ("An alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States.").

1 any arguments made and exhibits submitted in support of the . . . motion for temporary
2 restraining order." (ECF No. 6 (citing Fed. R. Civ. P. 65(a)(2).)

3 On November 12, 2025, Petitioner was released from detention and voluntarily dismissed
4 the motion for TRO in light of his release. (ECF No. 9; ECF No. 11-1 at 2.) On November 12,
5 2025, the assigned district judge referred this matter "to the assigned magistrate judge for the
6 preparation of findings and recommendations and/or other appropriate action." (ECF No. 10.) On
7 November 12, 2025, Respondents filed an answer, and Petitioner filed a reply on November 14,
8 2025. (ECF Nos. 11, 13.)

## II.

## DISCUSSION

Petitioner asserts that his detention violates: (1) the Immigration and Nationality Act, 8 U.S.C. § 1254a; and (2) due process because it is not rationally related to any immigration purpose, is not the least restrictive mechanism for accomplishing any legitimate purpose the government could have in imprisoning Petitioner, and lacks statutory authorization. (ECF No. 1 at 13–14.) In the petition, Petitioner requests the Court to:

1. Assume jurisdiction over this matter;
2. Order Respondents to show cause why the writ should not be granted within three days, and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. 2243;
3. Declare that Petitioner's detention violates the Immigration and Nationality Act, and specifically 8 U.S.C. 1254a;
4. Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment;
5. Grant a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody;
6. Enjoin Petitioners from further detaining Petitioner so long as TPS for Haiti remains in effect and he continues to hold TPS status;
7. Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and
8. Grant such further relief as this Court deems just and proper.

(ECF No. 1 at 14–15.) "Respondents do not oppose Petitioner's habeas petition with the limited exception of the scope of relief requested in Prayer for Relief number 6." (ECF No. 11 at 1.)

As Respondents do not oppose the merits of Petitioner's habeas petition, the Court recommends that the petition be granted. See 8 U.S.C. § 1254a(d)(4) ("An alien provided temporary protected status under this section shall not be detained by the Attorney General on

the basis of the alien's immigration status in the United States."); Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]").

The Court will now turn to whether Respondents should be enjoined from further detaining Petitioner so long as TPS for Haiti remains in effect and he continues to hold TPS status. Respondents argue that "[s]uch a blanket prohibition would be contrary to law because the governing regulations provide for specific instances where detention is permissible," citing 8 C.F.R. § 244.18(d). (ECF No. 11 at 1–2.) 8 C.F.R. § 244.18(d) provides:

> An alien who is determined by USCIS deportable or inadmissible upon grounds which would have rendered the alien ineligible for such status as provided in 8 CFR 244.3(c) and 8 CFR 244.4 may be detained under the provisions of this chapter pending removal proceedings. Such alien may be removed from the United States upon entry of a final order of removal.

Respondents contend "[g]iven the plain language of the governing regulations, the blanket prohibition requested by Petitioner . . . should not be granted." (ECF No. 11 at 2.)

In the reply, Petitioner argues:

> Respondents' contention is wrong because 8 C.F.R.§ 244.18(d) does not in fact permit the detention of holders of TPS status. 8 C.F.R § 244.18(d) states that an alien may be detained if the alien has been "determined by USCIS deportable or inadmissible upon grounds which would have rendered the alien ineligible for such [TPS] status as provided in 8 CFR 244.3(c) and 8 CFR 244.4." Such a determination by USCIS is made during the process of withdrawing TPS status from a TPS status holder. 8 C.F.R. § 244.14(b)(3). Therefore, if USCIS has made a such determination, then the alien would no longer be a holder of TPS status because that determination would have resulted in his TPS status being withdrawn. Without TPS status, the alien could be detained because he would no longer have the benefit of the provision against detention in the TPS statute. 8 U.S.C. § 1254a(d)(4). Thus, a plain reading of 8 C.F.R § 244.18(d) indicates that it only applies to those who have lost their TPS status after USCIS has withdrawn their status as a result of a determination that they are ineligible for TPS status under 8 CFR § 244.3(c) and 8 CFR § 244.4. Accordingly, enjoining Respondents from further detaining Mr. Jocelin as long as TPS for Haiti remains in effect and he holds TPS status would not be in conflict with 8 C.F.R § 244.18(d) because that regulation does not permit his detention while he has TPS status.

(ECF No. 13 at 2–3.)

1       "We start, of course, with the statutory text. Unless otherwise defined, statutory terms are
2 generally interpreted in accordance with their ordinary meaning." BP Am. Prod. Co. v. Burton,
3 549 U.S. 84, 91 (2006) (citations omitted). "USCIS may withdraw the status of an alien granted
4 Temporary Protected Status under section 244 of the Act" if the "alien was not in fact eligible at
5 the time such status was granted, or at any time thereafter becomes ineligible for such status." 8
6 C.F.R. § 244.14(a)(1).

> If the basis for the withdrawal of Temporary Protected Status constitutes a ground of deportability or excludability which renders an alien ineligible for Temporary Protected Status under § 244.4 or inadmissible under § 244.3(c), *the decision shall include a charging document* which sets forth such ground(s) with notice of the right of a de novo determination of eligibility for Temporary Protected Status in deportation or exclusion proceedings.

8 C.F.R. § 244.14(b)(3) (emphasis added). 8 C.F.R. § 244.18, entitled "Issuance of charging documents; detention," provides:

> A charging document may be issued against an alien granted Temporary Protected Status on grounds of deportability or excludability which would have rendered the alien statutorily ineligible for such status pursuant to §§ 244.3(c) and 244.4. Aliens shall not be deported for a particular offense for which the Service has expressly granted a waiver. If the alien is deportable on a waivable ground, and no such waiver for the charged offense has been previously granted, then the alien may seek such a waiver in deportation or exclusion proceedings. The charging document shall constitute notice to the alien that his or her status in the United States is subject to withdrawal. *A final order of deportation or exclusion against an alien granted Temporary Protected Status shall constitute a withdrawal of such status.*

8 C.F.R. § 244.18(a) (emphasis added).

      Petitioner contends that "a plain reading of 8 C.F.R § 244.18(d) indicates that it only applies to those who have lost their TPS status after USCIS has withdrawn their status as a result of a determination that they are ineligible for TPS status under 8 CFR § 244.3(c) and 8 CFR § 244.4" and "enjoining Respondents from further detaining Mr. Jocelin as long as TPS for Haiti remains in effect and he holds TPS status would not be in conflict with 8 C.F.R § 244.18(d) because that regulation does not permit his detention while he has TPS status." (ECF No. 13 at 2–3.) However, as set forth above, if the basis for the withdrawal of TPS "constitutes a ground of deportability or excludability which renders an alien ineligible for Temporary Protected Status under § 244.4 or inadmissible under § 244.3(c), the decision shall include a charging document."

1  8 C.F.R. § 244.14(b)(3). Although the charging document "shall constitute notice to the alien
2  that his or her status in the United States is subject to withdrawal," only a "final order of
3  deportation or exclusion against an alien granted Temporary Protected Status shall constitute a
4  withdrawal of such status." 8 C.F.R. § 244.18(a). Detention is authorized "under the provisions
5  of this chapter *pending removal proceedings*." 8 C.F.R. § 244.18(a) (emphasis added).

6     If a "final order of deportation or exclusion against an alien granted Temporary Protected
7  Status shall constitute a withdrawal of such status," 8 C.F.R. § 244.18(a), then detention pursuant
8  to 8 C.F.R. § 244.18(d) "pending removal proceedings" would occur before the withdrawal of
9  TPS status. Therefore, a plain reading of 8 C.F.R. §§ 244.14 and 244.18 contradicts Petitioner's
10 contention that 8 C.F.R. § 244.18(d) "only applies to those who have lost their TPS status after
11 USCIS has withdrawn their status as a result of a determination that they are ineligible for TPS
12 status under 8 CFR § 244.3(c) and 8 CFR § 244.4." (ECF No. 13 at 2.)

13    Accordingly, the Court finds that Petitioner's request to enjoin Respondents "from further
14 detaining Petitioner so long as TPS for Haiti remains in effect and he continues to hold TPS
15 status" is contrary to law because 8 C.F.R. § 244.18(d) specifically authorizes detention pending
16 removal proceedings after the "filing of the charging document by DHS with the Immigration
17 Court" "against an alien granted Temporary Protected Status on grounds of deportability or
18 excludability which would have rendered the alien statutorily ineligible for such status pursuant
19 to §§ 244.3(c) and 244.4." 8 C.F.R. § 244.18(b), (a). See Nat'l Ass'n of Mfrs. v. Dep't of Def.,
20 583 U.S. 109, 127 (2018) ("Because the plain language . . . is 'unambiguous,' 'our inquiry
21 begins with the statutory text, and ends there as well.'" (quoting BedRoc Limited, LLC v. United
22 States, 541 U.S. 176, 183 (2004) (plurality opinion))); United States v. LeCoe, 936 F.2d 398, 402
23 (9th Cir. 1991) ("If the statute's language is unambiguous, its plain language controls except in
24 rare and exceptional circumstances.")

### III.

### RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED;

6

2. Petitioner's request to enjoin Respondents "from further detaining Petitioner so long as TPS for Haiti remains in effect and he continues to hold TPS status" be DENIED; and

3. The motion for temporary restraining order (ECF No. 2) be DENIED as MOOT.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 17, 2025**

STANLEY A. BOONE
United States Magistrate Judge

7